United States District Court
District of Maryland
Northern Division

United States of America
Plaintiff

v.

Wayne Jenkins
Defendant, Pro Se

Case No.
CCB-17-638
Related Case No.
CCB-17-106

Motion For Relief
Pursuant To 18 U.S.C. § 3582

_____ FILED _____ ENTERED
_____ LOGGED _____ RECEIVED

DEC 1 5 2022

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

Wayne Jenkins asks this Honorable Court to find merit and good-cause in the points and facts presented in this motion and to agree justification exists to grant him his requested relief.

JURISDICTION:

This court has the authority to decide this matter under 18 U.S.C. § 3582. The matters described herein are admissible for RIS (Reduction In Sentence) relief under the 'extraordinary and compelling' reasons provision of this statute.

This matter is extraordinary because it includes several statutory deviation claim(s) that, if left uncorrected and adopted as precedent, would create a deviated hybrid to the original expression and intended meaning codified by the legislature. It is also compelling because such unauthoritatively legislated hybrids are impermissible under the Constitution and laws of the United States, (see., Article I; nondelegation doctrine).

1

WAIVER REQUESTED:

Jenkins asks this court to waive the exhaustion requirement of the Prison Litigation Reform Act because the issue presented is one of a matter of law by statutory interpretation, not a matter of fact. As this is a matter of law issue, Jenkins believes his prison administrators are without the ability or authority to decide matters of law, making his exhaustion with them an act of futility. As such, and in the interests of justice, Jenkins wishes to assert the futility doctrine privilege in support of this request.

I. ISSUE:

Whether an alteration to the words, terms, or expression used to apply a criminal statute against a defendant such as those of 18 U.S.C. § 1519 and § 242, may be acceptable, as a matter of law, when the legislative expressions of the original statute(s) have been modified to alter the meaning and scope originally codified by the legislature?

BACKGROUND:

On or around July 17, 2018, Jenkins pled guilty to 5 count(s) as alleged in the indictment CCB-17-0638. Count 1 charges a violation of 18 U.S.C. § 1519, and count(s) 2-5 charge several acts related to violations cognizable under 18 U.S.C. § 242. Count 4 however, is not necessarily related to the matters at issue, and in the interests of judicial economy is not specifically presented here. (See also, CCB-17-106).

Statutory provision as to Count 1

Jenkins was alleged to have;

"knowingly concealed, covered up and falsified and made false entries in an official Statement of Probable Cause in the District Court of Maryland for Baltimore City reflecting his actions, and the actions of his fellow Baltimore Police Department Officers, in relation to the seizure of heroin from an automobile operated by U.B. and in which B.M. was a passenger on April 28, 2010, with the intent to impede, obstruct and influence the investigation and proper administration of that matter, a matter within the jurisdiction of the United States Drug Enforcement Administration, a department and agency of the United States, or in relation to or contemplation of any such matter. 18 U.S.C. § 1519." (Doc, 1 pp.3-4).

The statute at issue, as it relates to this claim, reads as follows;

(B) § 1519: Destruction, alteration, or falsification of records in Federal investigations and bankruptcy.

"Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence THE investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or in relation to or contemplation of any such matter, or case, shall be fined under this title, imprisoned not more than 20 years, or both." (emphasis added).

The issue here is one of Congressional Legislative expression and of statutory interpretation as it relates to that expression. This case presents an example of an unrestrained expansion of the (terms, phrases, and) context of § 1519 in the prosecution of this matter against Jenkins. This expansion centers on the meaning(s), contemplated by the use of the words in conjunction with 'The investigation.' This applies to the present tense of those referents taken in context.

The government, by and through an impermissible engineering of misleading

statutory phrases, has manufactured an incongruous version of the statute's original terms resulting in an application of uncodified elements used to satisfy and secure a conviction under less-stringent standards than were passed into positive law.

    a. The word "the" in reference to "the investigation" indicates a present, active investigation, not a future probe.

The statutory text at issue here: "Whoever...alters any document...with the intent to obstruct...the investigation...[of any matter within the jurisdiction of a United States Department or agency]," is expressive of a U.S. investigation that is active at the time when an alteration to a document occurrs. (Emphasis added). The text of section 1519 uses the definite article "the" to indicate and denote one or more things under discussion, signifying a specific instance. (The Oxford New Desk Dictionary 3d. Ed. 2009). This means that when used with a noun, it is made to provide limits or definitiveness to an application or clause. (Merriam-Webster's Collegiate Dictionary 11th Ed. 2003).

This interpretation is supported by the governing rules of statutory construction found in the Senate Legislative Drafting Manual (SLDM, General Drafting Principles; subtitle A-Fundamental Rules, sec 103). No such alternative expression is present in section 1519, and by all indications incorporates the active present tense language consistent with the SLDM and of common grammatical English usage.

Jenkins did not derive the benefit of this understanding or application because of the alternative, artificial expression of the statute made in his indictment (Doc. 1. pp. 3-4) and of similar prevarications wrought in his rearraignment transcripts. (Doc. 19, p.7).

(i) Jenkins indictment indicates that this matter is properly cognizable

under this statute because:

> "[T]he investigation matter, [an official Statement of Probable Cause in the District Court of Maryland for Baltimore City]" is "a matter within the jurisdiction of the United States Drug Enforcement Administration...or in relation to or contemplation of any such matter or cause."

But this belies the fact that this record (The Statement of Probable Cause), and this matter (the arrest of U.B. and B.M.) were before the State court and not a matter which involved the D.E.A. The point here is that "the investigation" as identified by the government was wholly a State investigation at that time, but which, the government's clever incorporation of "or in relation to or contemplation of any such matter or case," a disjunctive referent related only to 'any' case filed under title 11, has effectually altered the scope and context of the statute's true elements. The government's conflation in this way effectively incorporates meaning and breadth not contemplated nor expressed in the legislature's original codified text, making this alteration impermissibly overbroad as a matter of law. For this reason alone, Jenkins is entitled to this court's judgment in favor of constraining the government's overbroad interpretation and application of this statute's elements.

(ii) The instruction Jenkins received from the court was also a disjunct from the terms and meanings codified in the original statute, leading him to believe that the court's divergent instruction was accurate when, in fact, it was inconsistent with the statute's given language.

As reflected in Jenkin's plea hearing transcripts, the court questioned him as to his understanding of the statute's elements. In doing so, the court explained:

"So for Count 1, in that case the Government would have to prove beyond a reasonable doubt, first of all, that you did alter or falsify or destroy or cover up or make a false entry in some record or document or object that [could be used] to record or preserve information as charged in the indictment, again, on or about the date charged.
They'd have to prove you acted knowingly and that you acted with the intent to impede, obstruct, or influence [an] investigation or some matter within the jurisdiction of or in relation to [] a department or agency of the United States Government." (emphasis added) (Doc. 19, p.7).

The interpretive conflict between the court's instruction and the statute arises when one considers that the plea instruction includes language that is expressive of the future tense. Then, the court applied that future tense to a categorically imperative term in place of the statute's own present tense language, thus altering the meaning of the original statute.

In other words, when the court ascribed the phrase "could be used" to refer to 'a record that had been altered,' it created a meaning that such 'record' was not presently active under investigation, but which could be summoned into action prospectively. This alteration could then trigger sections 1519's investigation element to be inclusive of 'anytime in the future.' The court also reinforced it's interpretation by including the word 'an' in describing "or influence an investigation...". But, both alterations serve to change the tense of the statute's true phrase; "[T]he investigation."

If the court's alteration were to be taken as an accurate and true representation, then the Congressional intent behind the statute would include an overbroad application of any previously made alteration or change to a document that may be used in some theoretical future investigation by a U.S. agency or department. Jenkins believes this would conflict with the rules established by the SLDM and would be too tenuous to satisfy this elemental statutory provision because it would create, im perpetuity, a cause of action against citizens that would lay dormant until such time as the government found convenient to initiate an investigation against them in some way. For these reasons, it can hardly be

concluded that it was the legislature's intent to create such an overbroad meaning to this statute. This violates basic tenets of statutory interpretation canons, where the expression of one thing in a statute, in this case the expression of the active, definitive article 'the,' necessarily implies the exclusion of other conflicting terms, such as 'could be used' or 'an' in reference to the referent 'investigation.' (Reading Law: The interpretation of legal texts, by Antonin Scalia and Bryan Garner. 2012).

Lastly, the court has further supported it's expansion of elements theme by instructing Jenkins that "an investigation" includes a matter, "in relation to [] a department or agency of the United States," But here, the 'in relation to' language is taken out of context because that language appears only applicable to 'any case filed under title 11."


(iii)  The final consideration to these statutory alterations is the effect those revisions have in justifying applicability to the intent required to satisfy the scienter of this statute.


Section 1519 makes clear that a defendant must 'knowingly' alter a document 'with the intent' to impede on a U.S. investigation. But, that is not the case here. Instead, it was Jenkins' intent to effectuate an arrest for drug possession, that is at the heart of this matter. Nowhere is it shown that Jenkins intended to halt or impede an active U.S. investigation by making his alleged record entry. But, there exists every indication the record at issue was meant to serve as an intended step towards securing an arrest.

But the government's statutory alterations, by design, have broadened the scope of the understood and generally accepted meaning of 'the investigation' so expansively as to include prospective, unforeseen, or uncontemplated investigation activity by a U.S. agency not yet established at the time of the record entry. It is in this way that satisfaction of the 'knowing' and 'intent'

elements of this provision of law could not otherwise have been satisfied but-for the government's modification of the statute's terms.

II. Issue

Whether it is permissible for a defendant, like Jenkins, to plead guilty to several counts of violating 18 U.S.C. § 242, and to serve a term of incarceration for violating that statute, without having satisfied one of the essential elements required to secure that conviction?

Background

In counts 2-5, this Honorable court advised Jenkins that the government would have to prove that Jenkins' conduct under 18 U.S.C. § 1519 additionally included violations under section 242 because those actions deprived U.B. and B.M. of their right to be free from the deprivation of liberty, through post-trial incarceration, without due process of law due to the fabrication of evidence. (Doc. 19, Pp.7-8).

Discussion

a. Jenkins asserts there are several layers of impermissible multiplicity here that are related to the very conduct contemplated by his conviction under section 1519. Also, the government's expansion of the scope of the due process clause to include Jenkins' failure to disclose [Brady] evidence is peculiar because that responsibility falls squarely upon the investigating prosecutor to determine that enough evidentiary justification exists to prosecute a matter, and that it is the trial process itself, and not the arresting officer's obligation, to sift through the facts and evidence presented to separate fact from fiction. Furthermore, the law has provided for a

remedy where fabrication of a Probable Clause statement exists under the exclusionary rule whereupon dismissal of the pending [matter] with prejudice is the customary resolution, and the law also affords for the awarding of damages under a civil action by way of a § 1983 suit. But here, the characterization that the misrepresentation of facts on a Probable Clause form does not, per se, deprive an arrestee of his fundamental procedure mechanism(s) in pre or post trial processes in determination of his innocence or guilt. Nor, as the Supreme Court has held, does the due process clause rely on equal protection, but rather, provides for 'a meaningful opportunity to be heard.' (Boddie v. Conn., S.Ct. 1971 (citation omitted);

For these reasons, the government's assertions here are overly-broad and vague and constitute an unconstitutional interpretation of section 242, as a matter of law. This court's examination of this claim is necessary to resolve this issue as a matter of law.

b.  The legislature's use of the 'serial comma' in it's construction of section 242 indicates that it's prepositive and postpositive modifier is intended to apply to the entire series of nouns or verbs, despite the inclusion of a conjunctive or disjunctive term.

The legislature's application of a serial comma in the structure, context, and codification of section 242 is consistent with the same type of punctuation and grammatical expression used in the construction of the 4th Amendment of the Constitution. This application is best understood under the series-qualifier canon of statutory interpretation. (see Reading Law: The Interpretation of Legal Texts, Antonin Scalia and Bryan Garner, 2012). It is for this reason that the "right of the people to be secure in their;

(1) persons,
(2) houses,

(3) papers,

(4) and effects,

finds that each item(s) 1-4 have application "against unreasonable searches and seizures." (U.S. Const. Amend. IV). Most importantly, it is this final serial con after the term 'effects' that gives this series of terms applicability to the fin modifier. If this last comma were omitted, however, the final modifier would apply only to the term 'effects' and would have no application to items 1-3. (see Last Antecedent canon, Id. Reading Law, p.144; also, Punctuation canon-stating that punctuation is a permissible indicator of meaning., Id., p.161).

Jenkins finds that this court should consider that these principles apply equally to section 242, and all statutes, for to do otherwise would render superflu the usage of such punctuation in the Constitution and would render ambiguous multitu of statutory-elemental provisions that rely upon the application of this interpretiv canon scheme. Specifically, section 242 reads as follows;

"Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be..."

From this text, it is apparent that the nouns or verbs; "rights, privileges, or immunities,...or to different pains, punishments, or penalties," have direct application to the modifier; "on account of such person being an alien, or by reason of his color or race, than are prescribed for the punishment of [white persons]." (using original statutory text).

It is the last 'serial comma' found in; "or penalties, on account of..." that makes clear that this statute's applicability was meant to serve as a bulwark

10

against unlawful State action targeting persons of color, race, or alienage in a discriminatory or hate-related context.

It is for these reasons that Jenkins was deprived of his right to due process of law with regard to the government's proposed meaning of section 242, and this court's adoption of that flawed interpretation. Nowhere in the government's charging instrument, plea, nor this court's instruction does this essential element appear. For example, this court's instruction states;

> "All right. Counts 2 through 5, they would have to prove that on or about the dates--they're somewhat different dates charged in the indictment--that you were acting under color of law; that in doing that, you deprived or caused to be deprived two individuals identified as U.B. and B.M. of their rights, which are secured and protected by the Constitution and laws of the United States; and specifically those were the rights to be free from the deprivation of liberty without due process of law; that includes the right to be free from incarceration due to the fabrication of evidence by a law enforcement officer; and also the right to be free from incarceration due to a law enforcement officer's willful failure to disclose exculpatory evidence to a prosecutor." (Doc. 19, Pp. 7-8).

Conspicuously absent from this instruction is the assertion that the necessary element that Jenkins' conduct was performed "on account of [U.B. and B.M.] being an alien, or by reason of [their] color or race." Had this elemental provisio of section 242 been instructed to Jenkins, he likely would have considered his defense options to this element and would have chosen a different option to the one he has committed to here.

For these reasons, Jenkins asks that this court consider these contentions to these statutory-interpretive matters-of-fact(s) in favor of the predominantly accepted traditions and practices of common-English grammar, punctuation, and usage as well as those canons of interpretations commonly adopted by every other District and Circuit court considering textualism and originalism principles.

Conclusion

Jenkins has shown that several significant alterations exist to the language of the federal statutes used to prosecute this matter. And, those alterations have had significant influence in changing the core meaning from that of the legislature's intended meaning and scope.

Since the expanded meaning given to these altered texts has broadened the scope of these statutes, Jenkins asserts he has been denied his ability to properly consider or prepare an adequate defense to these charges. This is because the presently adopted, overly-broad meanings provided are in conflict with the actual language and text of the statutes and serve as an impermissible end-run around the constraints originally codified into law.

For these reasons, Jenkins asks this Honorable court to find good-cause in the points and facts presented warranting a grant of his requested relief.

Verification

I have read the foregoing Motion for relief and hereby verify that the matters alleged herein are true, except as to matters alleged on information and belief, and as to those, I believe them to be true and correct. Executed at __Ashland__ __FCI__ on this __23__ day of ~~October~~ November, 2022.

Wayne Jenkins
Defendant, Pro Se

Certificate of service

I certify under the penalty of perjury that the foregoing Motion for relief was placed in the prison's internal mail system, postage pre-paid, for service upon this court via U.S. mail on this __12th__ day of ~~October~~ December, 2022. Jenkins asks this court's clerk to serve all other interested parties by electronic notice and to serve him with a stamped filed copy of this motion.

Wayne Jenkins<br>
Defendant, pro se