```
 1              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MARYLAND
 2                     NORTHERN DIVISION

 3   UNITED STATES OF AMERICA,   )
          Plaintiff,             )
 4                               )
          vs.                    ) CRIMINAL CASE NO. CCB-17-106
 5                               )
     DANIEL THOMAS HERSL,        )
 6        Defendant.             )
     _____)
 7

 8                    Friday, June 22, 2018
                         Courtroom 1A
 9                     Baltimore, Maryland

10

           BEFORE:  THE HONORABLE CATHERINE C. BLAKE, JUDGE
11

12           MOTION FOR NEW TRIAL - SENTENCING

13   For the Plaintiff:

14   Leo J. Wise, Esquire
     Derek E. Hines, Esquire
15   Assistant United States Attorneys

16   For the Defendant:

17   William Purpura, Jr., Esquire

18   Also Present:

19   Gina Swillo, U.S. Probation Officer
     Special Agent Kevin Bodmer, FBI
20

21   _____

22
                           Reported by:
23
                     Douglas J. Zweizig, RDR, CRR
24                  Federal Official Court Reporter
                   101 W. Lombard Street, 4th Floor
25                    Baltimore, Maryland  21201
```

*Douglas J. Zweizig, RDR, CRR - Federal Official Court Reporter*

**EXHIBIT 1**

|    |                                                                         |
|----|-------------------------------------------------------------------------|
| 1  | **THE COURT:** -- mental health.                                        |
| 2  | Is there anything specific by way of recommendation to                  |
| 3  | the Bureau of Prisons that you would be looking for?  I think           |
| 4  | designation of the facility is complex because of his prior             |
| 5  | employment, but --                                                      |
| 6  | **MR. PURPURA:** Actually, obviously, I hope -- and I                   |
| 7  | spoke to the BOP, and hopefully they can do what's appropriate.         |
| 8  | I spoke to Mr. Hersl, and at first his thought would be that he         |
| 9  | wanted to be outside of the jurisdiction for safety purposes,           |
| 10 | but now I think he's changed that.                                      |
| 11 | I'm going to ask the Court to recommend FCC at                          |
| 12 | Fairton, New Jersey.  But whatever the -- I'm sure whatever the         |
| 13 | BOP feels is appropriate in this particular case, they'll do.           |
| 14 | **THE COURT:** Okay.  All right.  Thank you.                            |
| 15 | Anything else --                                                        |
| 16 | **MR. PURPURA:** Nothing.  Thank you.                                   |
| 17 | **THE COURT:** -- that anybody wants to be heard on?                    |
| 18 | Conference at the bench.                                                |
| 19 | (It is the policy of this court that every guilty plea and              |
| 20 | sentencing proceeding include a bench conference concerning             |
| 21 | whether the defendant is or is not cooperating.)                        |
| 22 | **THE COURT:** Okay. All right.  As you've all heard me                 |
| 23 | say before, and it doesn't change, sentencing is a very                 |
| 24 | difficult process.  There are many things that have to be               |
| 25 | considered in this case.                                                |

*Douglas J. Zweizig, RDR, CRR - Federal Official Court Reporter*

**EXHIBIT 1**

         1          I'll start with the nature and circumstances of the
         2   offense and what are the harms caused by the conduct that the
         3   jury did find had been proved as to Mr. Hersl.
         4          And, of course, there are harms to the individual
         5   victims whose money was taken.  There was undoubtedly a
         6   wrongful use of official force.  The gun and the badge enabled
         7   taking money, which, again, according to the jury's verdict,
         8   and I think the law, was a robbery; but whether it's robbery or
         9   theft, this was accomplished by the wrongful use of Mr. Hersl's
        10   police authority.
        11          It is an abuse of the public trust.  Officers take an
        12   oath to uphold the law.  That gives them the right to have that
        13   gun and that badge so they can enforce the law, not break it.
        14          And the harm that's done to what's already a level of
        15   distrust between many in our community and the police is only
        16   deepened by these kinds of proven crimes.
        17          As has been referenced, the conduct of Mr. Hersl and
        18   others has resulted, it would appear, in the dismissal of
        19   probably hundreds -- or will result in the dismissal of
        20   probably hundreds of other criminal cases, some perhaps
        21   involving people wrongly convicted, some people who had, in
        22   fact, committed crimes, but those must be dismissed because the
        23   credibility of the officers on which the convictions rested has
        24   been destroyed.
        25          The overtime fraud obviously took money from a city

```
 1  that doesn't have any money to spare.  And this overall conduct
 2  has, as I've said before, made more difficult the job of the
 3  majority of the men and women in uniform here in the city who
 4  face danger and hardship every day trying to protect the
 5  public, and they do that now in the face of this increased lack
 6  of trust.
 7           And as I've said before, it strikes at the foundation
 8  of our entire criminal justice system if judges and juries
 9  can't rely on the word of sworn law enforcement officers
10  because they're covering up their own crimes, whatever those
11  crimes may be.  Now, so we have very, very serious offenses
12  here.
13           Obviously, I also need to consider the history and
14  characteristics of Mr. Hersl.  He's been a police officer for a
15  long time.  I don't doubt -- and as his brothers and others
16  have said -- that he has put himself in harm's way in the
17  course of that employment, that he has, in fact, protected
18  others, saved lives, been involved in very stressful and
19  disturbing situations.
20           I'm sure that he has been and continues to be,
21  obviously, very loyal to his family, to his friends.  I'm sure
22  he's done good things for his community and appreciates the
23  letters of support that have been offered for him and the
24  people that are here for him today, and many of whom were
25  present during the trial, of course.  And I do take that all
```

```
 1   into account, as I did with others.
 2           The letters that have been presented, and in
 3   particular Mr. Hersl's letters, certainly show his pain, his
 4   faith, his love of family, and that he is -- obviously already
 5   has been and is being punished again.  As is true for the other
 6   defendants in this case, it's reasonable to think that serving
 7   time in the Bureau of Prisons is -- it's difficult for anyone.
 8   It may be of particular difficulty for a former police officer.
 9           On the other hand, to reflect the seriousness of the
10   offense and promote respect for the law and provide just
11   punishment, I again say there must be a significant period of
12   incarceration.
13           I don't think there's an issue of specific deterrence
14   or recidivism as to Mr. Hersl.
15           But this is clearly one of the cases in my career as a
16   judge where the factor of general deterrence has great
17   importance.  There must be a clear message that officers who
18   break their oaths by robbery, by fraud, by other crimes will be
19   prosecuted and will be justly punished for that conduct.
20           Finally, there is the factor of relative culpability.
21   Mr. Hersl was not a supervisor, was not a sergeant like two of
22   the others that I have sentenced.  He was a fairly senior
23   member of the police force, but not a supervisor.
24           He apparently has committed a relatively similar
25   number of robberies with Mr. Taylor.
```

*Douglas J. Zweizig, RDR, CRR - Federal Official Court Reporter*

**EXHIBIT 1**

```
 1              There is some indication, there was some indication of
 2   drug involvement as to both Mr. Hersl and Mr. Taylor, but,
 3   frankly, nothing like the scale or the proof that was offered
 4   in regard to Sergeant Jenkins, who received the highest
 5   sentence in this case.
 6              I balance -- yes, he was a more senior member than
 7   Mr. Taylor.  I do note that to some degree, not in a guideline
 8   sense, I do believe there has been some acceptance of
 9   responsibility by Mr. Hersl.
10              And when I consider all those factors, I find that the
11   sentence that was imposed on Former-Officer Taylor is the same
12   sentence that is fair, reasonable, and just for Mr. Hersl, that
13   is 18 years.  That is 216 months in the custody of the Bureau
14   of Prisons.
15              That is -- I will state that, and you'll tell me if
16   there's any lawful legal objection to anything that I'm saying,
17   but I believe it should be 18 years on Counts 1 and 2 and 5,
18   concurrent, of course, with credit for time served.
19              That there would be a period of three years of
20   supervised release, concurrent on each count to follow, with
21   special conditions of participating in any alcohol abuse
22   treatment program the probation officer recommends and any
23   mental health counseling or treatment the probation officer
24   recommends and providing financial information to the
25   Probation Office.
```

*Douglas J. Zweizig, RDR, CRR - Federal Official Court Reporter*

**EXHIBIT 1**

```
 1              In that regard, I'll just note briefly, again, we
 2   didn't discuss restitution, but is that the same --
 3              MR. WISE:  We're preparing a global restitution order
 4   which we'll be submitting -- circulate to counsel and be
 5   submitting after this sentencing and before the other -- I
 6   think the remaining sentencings.
 7              THE COURT:  The restitution will be deferred.
 8              His financial circumstances don't permit a fine.
 9              There is a required $100 special assessment on each
10   count.  That's a total of $300 that I will impose.
11              I'll certainly make the recommendation to the Bureau
12   of Prisons that they consider a designation to FCI Fairton so
13   he can be close to his family.  That's, again, up to the Bureau
14   of Prisons.  And there are a lot of security issues to
15   consider.
16              And have I left anything out?  Anything I have not
17   addressed?  Any legal objection to that sentence or not
18   covered?
19              MR. WISE:  Not from the United States, Your Honor.
20              MR. PURPURA:  Your Honor, I might have missed it,
21   supervised release?
22              MR. WISE:  Three years.
23              MR. PURPURA:  Oh, she said that?  Okay.
24              THE COURT:  I'm sorry?
25              MR. PURPURA:  I didn't -- I missed it.  You mentioned
```

*Douglas J. Zweizig, RDR, CRR - Federal Official Court Reporter*

**EXHIBIT 1**

| | |
|---|---|
| 1 | it, supervised release.  There's nothing further. |
| 2 | **THE COURT:**  Sure.  Yes.  Three years concurrent. |
| 3 | I have a note from our courtroom deputy.  Counts 1 and |
| 4 | 2 of the original indictment? |
| 5 | **MR. WISE:**  There was an original indictment.  I don't |
| 6 | recall if we dismiss after trial.  I don't think we do in case |
| 7 | there's an issue on appeal. |
| 8 | **THE COURT:**  Because of the appeal? |
| 9 | **MR. WISE:**  Right. |
| 10 | **THE COURT:**  Okay.  All right. |
| 11 | Mr. Hersl, obviously, as I'm sure you're aware, you do |
| 12 | have a right to appeal, both from the result of the trial, the |
| 13 | convictions, and from this sentence.  You will consult with |
| 14 | Mr. Purpura about that. |
| 15 | But any appeal would need to be noted within 14 days. |
| 16 | Do you understand that, sir? |
| 17 | **THE DEFENDANT:**  Yes, Your Honor, I understand. |
| 18 | **MR. PURPURA:**  Your Honor, just on that issue, the |
| 19 | Court, based on a filing by Mr. Hersl, had found that Mr. Hersl |
| 20 | presently does not have funds for counsel.  And would that hold |
| 21 | for the appeal?  Because -- |
| 22 | **THE COURT:**  That, I believe, will be up to the |
| 23 | Fourth Circuit. |
| 24 | **MR. PURPURA:**  Fourth Circuit. |
| 25 | **THE COURT:**  But if you note the appeal, it is up to |

*Douglas J. Zweizig, RDR, CRR - Federal Official Court Reporter*

**EXHIBIT 1**