IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case Nos. 1:17-cr-00106-GLR |
| | : | 1:17-cr-00638-GLR |
| WAYNE EARL JENKINS | : | |

### UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR RELIEF FROM ORDER RELATED TO DISCOVERY MATERIALS PURSUANT TO RULE 60

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this response to defendant Wayne Earl Jenkins' *pro se* Motion for Relief from Order Related to Discovery Materials Pursuant to Rule 60 (Case No. 17-106 ECF No. 929/Case No. 17-638 ECF No. 61). In his motion, defendant asks the Court to allow him to file a reply to the United States' December 19, 2024, Opposition to Defendant's Motion to Compel Government (Case No. 17-106 ECF No. 900/Case No. 17-638 ECF No. 55) in an effort to obtain relief, pursuant to Federal Rules of Civil Procedure 60(b)(1) and (3), from the Court's September 15, 2025, denial of his motion to compel the government to provide him with certain discovery materials (Case No. 17-106 ECF No. 925/Case No. 17-638 ECF No. 57). The government does not oppose the Court granting defendant further time to file a reply. Based on the representations made in defendant's motion for relief, however, the government continues to oppose defendant's request for the Court to compel the government to produce post-conviction discovery materials.

### BACKGROUND

Defendant was a member of the Baltimore Police Department (BPD) who, between at least 2015 and 2017, abused his position to rob civilians he encountered in the course of his official

duties using BPD-issued firearms, steal drugs and money, commit overtime fraud, and author false incident reports, arrest reports, and warrant affidavits. Defendant, a Sergeant and officer-in-charge (OIC) of the BPD's Gun Trace Task Force (GTTF), recruited other members of the GTTF into his scheme and led a conspiracy of at least six police officers.

In addition, on April 28, 2010, while driving an unmarked BPD vehicle, defendant engaged in a pursuit of a car driven by "U.B." and in which "B.M." was a passenger. During the chase, U.B.'s car struck another car at a high rate of speed, causing the struck car to be pushed onto the front porch of a home, trapping the driver of the struck car in the car, and ultimately leading to that driver's death. After the collision, defendant or an accomplice planted approximately 28 grams of heroin in U.B.'s car. Defendant later authored a false Statement of Probable Cause to support the arrests of U.B. and B.M. U.B. and B.M. were charged with, and imprisoned for, federal drug charges relating to the planted heroin.

On January 5, 2018, defendant entered pleas of guilty in two cases, pursuant to a Rule 11(c)(1)(C) agreement (Case No. 17-106 ECF No. 254/Case No. 17-638 ECF No. 5; Case No. 17-106 ECF No. 452/Case No. 17-638 ECF No. 19). In case number 17-106, he pled guilty to racketeering conspiracy, racketeering, and two counts of Hobbs Act robbery (Case No. 17-106 ECF No. 452/Case No. 17-638 ECF No. 19 at 3, 5-6; Case No. 17-106 ECF No. 254/Case No. 17-638 ECF No. 5 at ¶ 1). In case number 17-638, he pled guilty to all of the counts with which he was charged, that is, one count of destruction, alteration, or falsification of records in federal investigations and four counts of deprivation of rights under color of law (Case No. 17-106 ECF No. 452/Case No. 17-638 ECF No. 19 at 3, 7-8; Case No. 17-106 ECF No. 254/Case No. 17-638 ECF No. 5 at ¶ 1).

Defendant signed a plea agreement relating to his guilty pleas (Case No. 17-106 ECF No. 254/Case No. 17-638 ECF No. 5). As to the April 28, 2010, crimes, defendant admitted to the following facts:

> On April 28, 2010, JENKINS[,] driving an unmarked BPD vehicle with Officer #2 as his passenger, and Officer #1, who was also driving an unmarked BPD vehicle, engaged in a vehicle pursuit of a car driven by U.B. B.M. was a passenger in the car driven by U.B.
>
> At the intersection of Belle Avenue and Gwyn Oak Avenue, U.B., who was driving at a high speed, struck a car entering the intersection. The impact of the collision was so great that the car was pushed onto the front porch of a row house on the Southeast corner of the intersection. The car was operated by an elderly man and his wife was a passenger. The elderly driver was trapped in the car after the collision and died later that day.
>
> JENKINS did not find any drugs in the car driven by U.B. immediately after the crash.
>
> After the crash, and after U.B. and B.M. had been arrested, JENKINS told Officer #2 to call a Sergeant who was not at the scene because he had the 'stuff' or 'shit' in his car, or words to that effect.
>
> Later, Officer #1 found approximately 28 grams of heroin in the vehicle. In fact, this heroin had come from JENKINS' police vehicle and had been planted in the car driven by U.B.
>
> Later that day, JENKINS authored a false Statement of Probable Cause where he claimed that, "32 individually wrapped pieces of plastic containing a tan powder substance each weighing approximately one gram (all of which was suspected high purity heroin)" was recovered from U.B.'s car by Officer #1, when in truth and fact, JENKINS knew that the heroin in U.B.'s car had been planted. JENKINS signed the report under an affirmation that declared, "I SOLEMLY [sic] AFFIRM UNDER PENALTIES OF PERJURY THAT THE MATTERS AND FACTS SET FORTH IN THE FOREGOING DOCUMENT ARE TRUE TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF."
>
> Following the incident, JENKINS listened to recorded jail calls of U.B. and B.M. JENKINS told Officer #2 that they were saying that the heroin recovered from the car had been planted on them. JENKINS told Officer #2 that JENKINS could not testify if the case

> went to trial because, "something had been put in the car" or words to that effect, referring to the heroin that had been planted in U.B.'s car.
>
> JENKINS knew that U.B. and B.M. were subsequently charged with, and imprisoned for, federal drug charges for the heroin that had been planted in U.B.'s car.
>
> Later, when JENKINS was the OIC of an SES [Special Enforcement Section] unit and of the GTTF he told his co-defendants about this episode. JENKINS discussed carrying BB gun pistols so that he could plant them on a suspect if he could not find a firearm on the suspect. When JENKINS and the other members of the GTTF were arrested, BB gun pistols were recovered from their vehicles.
>
> JENKINS admits that between in or about April 28, 2010, and November 30, 2017, he knowingly concealed, covered up and falsified and made false entries in an official Statement of Probable Cause in the District Court of Maryland for Baltimore City reflecting his actions, and actions of his fellow Baltimore Police Department officers, in relation to the seizure of heroin from an automobile operated by U.B. and in which B.M. was a passenger on April 28, 2010, with the intent to impede, obstruct and influence the investigation and proper administration of that matter, a matter within the jurisdiction of the United States Drug Enforcement Administration, a department and agency of the United States, or in relation to or contemplation of any such matter.

*Id.* at Attachment A ¶¶ 62-71. Defendant also admitted that he willfully deprived U.B. and B.M. of the rights to be free from incarceration due to the fabrication of evidence by a law enforcement officer and to be free from incarceration due to a law enforcement officer's willful failure to disclose exculpatory evidence to a prosecutor. *Id.* at ¶¶ 72-75.

As part of his plea agreement, defendant waived "any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agree[d] not to file any request for documents from [the United States Attorney's Office for the District of Maryland] or any investigating agency" (Case No. 17-106 ECF No. 254/Case No. 17-638 ECF No. 5 at ¶ 24d).

At his plea hearing, defendant affirmed that he had read the statement of facts in the plea agreement (Case No. 17-106 ECF No. 452/Case No. 17-638 ECF No. 19 at 16). The judge provided a synopsis of those facts during the plea proceedings. As to the April 28, 2010, crimes, the judge stated, in part, that the statement of facts "essentially says that you were responsible for having heroin planted" in U.B.'s car and "authoring a false statement of probable cause." *Id.* at 20. The judge said that the statement of facts reflected that defendant knew that U.B. and B.M. were charged with and imprisoned for federal drug charges relating to "the heroin that had been planted in U.B.'s car." *Id.*

The Court asked whether the statement of facts was correct and whether defendant did what the statement said that he did (Case No. 17-106 ECF No. 452/Case No. 17-638 ECF No. 19 at 21). Defense counsel indicated that defendant had one "correction" to the statement of facts. *Id.* Counsel said:

> What the statement of facts actually reads -- and there was a lot of back-and-forth about this -- Mr. Jenkins is acknowledging that he was aware that drugs had been planted.
>
> He's not acknowledging that he planted the drugs, although he's acknowledging that he authored a false report with respect to another officer planting those drugs.

*Id.*

The Court stated:

> With that context, which I think is consistent with what's in the statement of facts, but let me ask you again, Mr. Jenkins: Do you agree that the statement of facts, with the further acknowledgment by your counsel, but do you agree that that is correct and you did what it says in there you did?

(Case No. 17-106 ECF No. 452/Case No. 17-638 ECF No. 19 at 22). Defendant responded affirmatively and agreed that he was guilty of the offenses outlined in the plea agreement. *Id.*

5

On June 7, 2018, defendant was sentenced, in case number 17-106, to an aggregate term of 240 months' imprisonment to be followed by three years of post-release supervision, and, in case number 17-638, to an aggregate term of 60 months' imprisonment to be followed by three years of post-release supervision. The aggregate terms of imprisonment in the two cases were imposed consecutively to each other, for a total aggregate term of imprisonment of 300 months (25 years) (Case No. 17-106 ECF No. 422 at 3-4; Case No. 17-638 ECF No. 12 at 3-4; Case No. 17-106 ECF No. 453/Case No. 17-638 ECF No. 20 at 53).

On September 19, 2024, defendant filed a *pro se* motion to compel, in which he asked the Court to order the government "to provide all 302 Witness Statements that were never provided" (Case No. 17-106 ECF No. 880/Case No. 17-638 ECF No. 53 at 1).[1] Defendant asserted that he "was never afforded an opportunity to review these documents" prior to his guilty plea. *Id.*

On December 19, 2024, the government opposed defendant's motion (Case No. 17-106 ECF No. 900/Case No. 17-638 ECF No. 55). The government explained that defendant's motion was a fishing expedition in search of a potential basis for a purportedly forthcoming 28 U.S.C. § 2255 motion. The government noted that under the standards of Rule 6(a) of the Rules Governing Section 2255 Proceedings, it is defendant's burden to support any § 2255 claim with an adequate factual and legal basis *before* the Court permits post-conviction discovery. Defendant had not filed a § 2255 motion and had not demonstrated good cause for the Court to order the government to provide the requested materials.

Defendant did not file a reply to the government's opposition by his deadline. On September 15, 2025, this Court denied defendant's motion to compel because he "failed to show

---

[1] The government's opposition to defendant's motion to compel describes additional post-conviction litigation (Case No. 17-106 ECF No. 900/Case No. 17-638 ECF No. 55 at 4-7).

6

a good cause for the Court to order the government to provide the requested materials" (Case No. 17-106 ECF No. 925/Case No. 17-638 ECF No. 57 at 1).

On September 26, 2025, defendant filed a *pro se* motion to file a belated reply (Case No. 17-106 ECF No. 928/Case No. 17-638 ECF No. 58). He stated that the issue about which he wished to file a reply was that "he was never afforded the opportunity to review 302s which show that other officers of the Baltimore PD ('BPD') were aware that another officer, and not Jenkins, was responsible for planting narcotics on a Defendant for which Jenkins was charged and pled guilty." *Id.* at 1. Defendant stated that he had been unable to file a reply by the deadline because he had transferred prisons, which complicated his receipt of mail, and had not been able to successfully retain an attorney. *Id.* at 2-3. On October 8, 2025, the Court denied the motion as moot (Case No. 17-106 ECF No. 930/Case No. 17-638 ECF No. 62).

On October 3, 2025, defendant filed, *pro se*, the instant motion, a motion for relief from the Court's September 15, 2025, order. He asks the Court to vacate its September 15, 2025, order and to give him 30 days to file a reply to the government's December 19, 2024, opposition to his motion to compel (Case No. 17-106 ECF No. 929/Case No. 17-638 ECF No. 61 at 4). Defendant claims that the "FBI 302 interview summaries" that he is seeking "demonstrate Jenkins's innocence regarding one aspect of the cases brought against him." *Id.* at 1. Specifically, defendant asserts that the documents he is requesting show that Detective Momodu Bondeva Kenton Gondo told the FBI that Detective Sean Suiter admitted to planting the drugs in U.B.'s car. *Id.* at 3. Defendant further contends that the interview summaries "should have been produced long ago," and he states that "a full argument for the 302s, in light of the U.S.'s position, would be shortly forthcoming" if he is allowed to file a reply. *Id.*

7

The government does not oppose defendant having additional time to file a reply to the government's opposition to his motion to compel. The government notes, however, for the reasons discussed below and in its December 19, 2024, opposition, that defendant has not demonstrated either that he has ever been entitled to the documents he is now requesting or that the purported content of those documents is exculpatory.

## DISCUSSION

The standards governing post-conviction discovery were discussed in the government's December 19, 2024, opposition (Case No. 17-106 ECF No. 900/Case No. 17-638 ECF No. 55 at 8-9). Briefly, discovery in a post-conviction proceeding is authorized only if the Court finds "good cause" for it. To demonstrate "good cause" under Rule 6(a) of the Rules Governing Section 2255 Proceedings, a defendant must present "specific allegations" that establish "reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (internal quotation marks omitted).

Here, defendant has not shown good cause for the Court to compel the government to provide the requested discovery materials. Initially, defendant has not filed a § 2255 motion. Moreover, he has not demonstrated that the documents he seeks would support a meritorious claim. Even assuming *arguendo* that the requested witness summaries show what defendant alleges -- that Detective Gondo told the FBI that Detective Suiter stated to Gondo that Suiter had planted the drugs in U.B.'s car -- defendant would not be entitled to those documents. After all, in his plea, defendant admitted that he orchestrated the planting of the drugs in U.B.'s car, not that he planted them himself. Thus, which officer physically planted the heroin is immaterial.

8

Further, defendant has not demonstrated that he was entitled to receive the witness interview statements before his guilty plea. "[T]he Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *United States v. Ruiz*, 536 U.S. 622, 633 (2002). Thus, defendant has not shown that, if the Court orders the discovery defendant seeks, he will be able to develop facts to show that he is entitled to relief based on a pre-plea discovery violation. Moreover, when defendant entered his guilty plea, he waived his right to request the production of documents from the United States Attorney's Office for the District of Maryland or any investigating agency.

While the government does not oppose the Court giving defendant additional time to file a reply, the government continues to oppose defendant's motion to compel. Defendant has failed to show good cause for his request, failed to show that the government violated its discovery obligations, and waived his right to make this type of request.

**CONCLUSION**

For the reasons stated above, the United States does not oppose defendant's request to be given an additional opportunity to file a reply to the government's December 19, 2024, opposition to defendant's September 19, 2024, motion to compel. The government continues to oppose, however, his request for this Court to compel the government to provide him with post-conviction discovery materials.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

KACIE M. WESTON
Chief, Special Proceedings Division
MD Bar

THOMAS STUTSMAN
Deputy Chief, Special Proceedings Division
MN Bar

　/s/ Tracy Suhr　　　
TRACY SUHR
Special Assistant United States Attorney
　Acting Under Authority Conferred by 28 U.S.C. § 515
Special Proceedings Division
United States Attorney's Office
　for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-6898
Tracy.Suhr@usdoj.gov

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that, this 29th day of October 2025, I caused a copy of the foregoing to be served via U.S. mail, postage prepaid, on:

Wayne Earl Jenkins
Fed. Reg. No. 62928-037
FMC Lexington
Federal Medical Center
P.O. Box 14500
Lexington, KY 40512

                                                      */s/ Tracy Suhr*
                                                TRACY SUHR
                                                Special Assistant United States Attorney